IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY L. CARTER, | ) | CASE NO. 1:02CV2231 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Judge John M. Manos |
| | ) | |
| NORMAN ROSE, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | MEMORANDUM OF OPINION |

On November 14, 2002, Anthony L. Carter, Petitioner, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. A Magistrate Judge has recommended that the petition be denied.

The Court finds than an evidentiary hearing is not necessary to decide this petition. See 28 U.S.C. § 2254(e); Rule 8(a) of Rules Governing 2254 Proceedings. For the following reasons, the Court adopts the Magistrate Judge's recommendation, and the petition is DENIED.

## I. FACTS

On October 8, 1982, in the Ohio Court of Common Pleas for Summit County, a jury convicted Anthony Carter of two (2) counts of grand theft in violation of Ohio Revised Code § 2913.02 (A)(1) and one (1) count of robbery in violation of O.R.C. § 2911.02 (Case No. CR82-8-968). The court sentenced him to two (2) to five (5) years imprisonment for grand theft and five (5) to fifteen (15) years imprisonment for robbery, to be served consecutively. (Return of Writ Ex. 1.)

On October 18, 1991, in the Ohio Court of Common Pleas for Summit County, a jury convicted Carter of grand theft in violation O.R.C. § 2913.02 (A)(1) (Case No. CR91-05-1012). On October 22, 1991, the court sentenced him to two (2) to ten (10) years of imprisonment. (Return of Writ Ex. 4.)

On May 1, 2001 the Ohio Adult Parole Authority ("APA") released Carter on parole. (Return of Writ Ex. 5.)

On September 24, 2001, the Akron Municipal Court convicted Carter of two (2) counts of petty theft (Case Nos. 01-CRB-2824 and 01-CRB-4092). The court sentenced him to 180 days of imprisonment for each count and suspended 173 days of one sentence and 175 days of the other. (Return of Writ Ex. 8.) Because of these convictions, his parole officer, Shannon Rothgeb, recommended that the APA revoke his parole. Id.

On October 16, 2001, acting on Rothgeb's recommendation, the APA held a parole violation hearing.[1] Parole Board Hearing Officer Romine dismissed all of the charges because the hearing was not scheduled within APA Policy 501-27 time constraints. (Return of Writ Ex. 10.)

The hearing officer instructed Carter to report to his parole officer the next day. He did not report, and the APA declared him a parole violator at large. (Return of Writ Ex. 9. at 2.) Carter's parole officer was not able to contact him because he was not residing at his APA approved residence. Id.

On December 3, 2001, Carter was arrested for petty theft at the J.C. Penny store in the Rolling Acres Mall in Akron, Ohio. (Case No. 01-CRB-13016). On December 10, 2001, Carter was convicted in the Akron Municipal Court of petty theft and sentenced to 60 days of work release. Id.

On December 19, 2001, while Carter was still in custody at the Summit County Jail for the December 3, 2001 theft, Parole Officer Rothgeb served him with a three part APA form. (Pet. Ex. B). The first part of the form notified him of another violation hearing. The APA alleged that he did not report to his supervising officer, that he did not reside at an approved residence, and that he was convicted of theft while on parole. Carter initialed each allegation indicating his denial. The second part of the APA form provided him with an opportunity to call witnesses. He did not call any witnesses. The third part of the APA form provided him with an opportunity to request counsel. He requested a

---

[1] The APA held the hearing to consider numerous allegations against Carter: (1) on May 29, 2001, he tested positive for cocaine and marijuana; (2) he did not attend substance abuse assessments; (3) on June 4, 2001, he tested positive for cocaine, marijuana, and opiates; (4) he was not at home when his parole officer visited; (5) on June 5, 2001 and July 23, 2001 he failed to report to his parole officer; and (6) he was charged with two counts of petty theft. (Return of Writ Ex. 8 at 2.)

public defender. Id.

On December 31, 2001, Parole Officer Diane Mealey of the APA conducted Carter's release violation hearing. (Return of Writ Ex. 13.) A public defender represented him. (Return of Writ Ex. 12.) Parole Officer Rothgeb testified that Carter did not report on October 17, 2001. (Return of Writ Ex. 12. at 2.) On cross examination Rothgeb also testified that Carter did not provide her with his correct address. Senior Officer Robert Cox testified that Carter later called to provide his correct address. Carter testified on his own behalf. He stated that he did not report to his parole officer on October 17, 2001 because he had been arrested for an outstanding warrant in Cleveland. He testified that he called his parole officer and told her that he had been arrested. The APA provided a parole violation report showing that, on May 25, 2001, Carter tested positive for cocaine and marijuana. On June 4, 2001, he tested positive for cocaine, marijuana, and opiates. The report showed that Carter had been convicted of two counts of petty theft and that he was not living at his APA approved residence when his parole officer visited. The APA also provided a journal entry of the Akron Municipal Court showing that Carter was convicted of theft on December 10, 2001. Id.

After hearing the testimony and evidence against Carter, Officer Mealey revoked his release. (Pet. Ex. C.) Mealey found that he had violated three conditions of his parole. She wrote a summary of her findings. First, based on a copy of reporting instructions, Rothgeb's testimony, and Carter's testimony, Mealey found that he did not report to his parole officer on October 16, 2001. Second, based on Rothgeb's testimony and Carter's testimony, Mealey found that he did not reside at an approved residence. Third, based on a judgment entered by the Akron Municipal Court, Mealey found that Carter was convicted of a crime while on parole. Id.

After revoking Carter's release, Mealey set a post-revocation hearing for May 2002 to determine the length of time Carter would spend in prison. (Pet. Ex. C.) The APA rescheduled the post-revocation hearing of March 6, 2002. (Pet. Ex. D.) At the post-revocation hearing, the APA reinstated 18 months of his sentence. The parole board set his next parole hearing for June, 2003. Id.

Prior to Carter's conviction for petty theft, the APA adopted a new parole hearing policy.

(Pet. Ex. E.) Policy 501-27 ("Policy") provides that a violation hearing should be conducted no later than 15 business days after the APA supervising unit has activated a hold order. Section N of the Policy states that, "most first time parole violators shall receive a unit level sanction." These sanctions are additional restrictions on the parolee's release. They do not include revocation of release. However, the Policy states that the APA unit supervisor has discretion in deciding whether to hold a violation hearing. If the supervisor decides to hold a violation hearing, all sanctions are available, including revocation of release. Id.

Carter claims that the APA did not follow its revocation proceedings policy. (Pet. at 4.) He states that he filed a grievance with the APA. Id. at 2. The APA does not have any record of receiving the grievance. (Return of Writ at 6.)

On April 8, 2002, Carter filed a petition for writ of mandamus with the Ohio Supreme Court to compel the APA to release him on parole. (Return of Writ Ex. 16.) The court dismissed the petition, finding that he had not followed grievance filing procedures. (Return of Writ Ex. 18.) On July 1, 2002, Carter filed another petition for a writ of mandamus. (Return of Writ Ex. 19.) Again, the Supreme Court of Ohio dismissed the writ, because he had no right to release on parole, the APA had acted within its discretion in revoking his parole, and he had a cause of action in habeas corpus. (Return of Writ Ex. 22.) Carter claims that he has not filed a petition for writ of habeas corpus in the Ohio state court because there is no state action in habeas corpus for parole violation hearings. (Traverse at 3.)

On November 14, 2002, he filed this petition for a federal writ of habeas corpus. (Pet. at 1.) Carter raises two grounds for relief:

> *Ground One:* The APA violated his due process rights by not following Policies 501- 27 and 501-29. Since he was a first time violator, the APA should have given him unit level sanctions rather than revoking his release.
>
> *Ground Two:* The APA denied him his due process rights at the second stage of his revocation proceedings.

(Pet. at 4-5.)

Respondent argues that Carter has not exhausted his available remedies by not filing a grievance with the APA and by not filing a petition for habeas corpus in the Ohio state courts. (Return

-4-

of Writ at 8.) He further argues that Carter's release revocation hearing satisfied all federal due process requirements. Id. at 8-9. He emphasizes that Carter was given written notice of the hearing, was notified of his rights, had assistance of counsel, had an opportunity to cross examine witnesses, and received a written notice of the findings of the hearing. Id. at 9.

On January 26, 2005, a Magistrate Judge recommended that his petition be denied. (Docket No. 24.) Neither Petitioner nor Respondent has filed any objections to the magistrate judge's report.

## II. LAW

### A. Jurisdiction

Under 28 U.S.C. §2254 a prisoner must exhaust his state court remedies before a federal court may grant a writ of habeas corpus. Picard v Connor, 404 U.S. 270, 275 (1971). If the district court is convinced that the prisoner's petition lacks merit, it may deny the writ to prevent useless litigation. 28 U.S.C. § 2254(b)(2); Lott v. Coyle, 261 F.3d 594, 608 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002).

In Brewer v. Dahlberg, 942 F.2d 328, 338 (6th Cir. 1991), the Sixth Circuit held that the only cognizable habeas action in Ohio state courts for APA decisions is when the prisoner claims that the APA did not have jurisdiction over him when it revoked his parole.

### B. Burden of Proof

In order to prevail on a petition for a writ of habeas corpus in federal court, the petitioner must prove by clear and convincing evidence that his federal due process rights have been violated. 28 U.S.C. § 2254(e)(1).

### C. Federal Due Process Requirements for Parole Revocation Hearings

The Supreme Court defined federal due process requirements for parole revocation proceedings in Morrissey v. Brewer, 408 U.S. 471, 485-89 (1972). In Morrissey, two parolees filed petitions for writs of habeas corpus. Id. at 472-73. The parolees argued that their parole had been revoked in violation of the Due Process Clause of the Fourteenth Amendment because the parole board did not hold a revocation hearing. Id. at 474. In reversing the lower court's decision, the

Supreme Court stated that parole revocation hearings do not require the same due process as a criminal proceeding. Id. at 481-82. The Supreme Court reasoned that parolees have less of a liberty interest than a defendant in a criminal trial. A parolee's liberty interest is conditioned on the terms of his release. Therefore, due process affords a parolee fewer procedural guarantees than a criminal defendant. Id. at 480.

The Supreme Court in Morrissey held that due process requirements are different for each of two stages of parole revocation: the preliminary hearing and the revocation hearing. When a parolee is arrested he should receive a preliminary hearing to determine if there is probable cause to hold him as a parole violator. Id. at 485. The parolee should be given notice of the preliminary hearing, have his case heard by an impartial hearing officer, and receive a written explanation of the officer's findings. Id. at 486-87. The Supreme Court stated that the minimum due process requirements for the second stage of parole revocation are:

> (1) written notice of the claimed violations of parole;
> (2) disclosure to the parolee of evidence against him;
> (3) opportunity to be heard in person and to present witnesses and documentary evidence;
> (4) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);
> (5) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
> (6) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 487-89. The revocation hearing must be the final evaluation of any contested relevant facts and a determination of whether the facts warrant revocation. Id. at 488.

Additionally, the Sixth Circuit has held that procedural statutes and regulations governing parole revocation proceedings do not create any additional federal due process rights. Sweeton v. Brown, 27 F.3d 1162, 1164-65 (6th Cir. 1978). The Supreme Court also has held that there is no absolute right to counsel at parole revocation proceedings. Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973).

### III. ANALYSIS

**A. Exhaustion of state remedies.**

The parties disagree as to whether Carter actually filed a grievance with the APA. Carter

claims he did. (Return of Writ Ex. 15.) He attaches to his petition a grievance that alleges that the APA did not follow its policy in conducting his revocation hearing. Id. The APA has no record of receiving the grievance. (Return of Writ at 6.)

Additionally, it is Carter's burden to show that he has pursued a state remedy in habeas corpus. He admits that he has not done so. (Traverse at 3.) According to the Sixth Circuit's holding in Brewer v. Dahlberg, 942 F.2d at 338, the only cognizable claim in Ohio for habeas is lack of jurisdiction. Carter is asserting that the APA denied him procedural guarantees; he is not raising any jurisdictional issues. He has filed two petitions for writ of mandamus. The Ohio courts have had an opportunity to decide his case on the merits.

The Court, therefore deems his state remedies to be exhausted.

**B. The merits of Carter's petition.**

The APA has provided Carter with all of the procedural guarantees that the Supreme Court required in Morrissey. Upon reviewing Carter's petition it is clear that he misunderstands the procedural history of his case. He asserts that his December 31, 2001 hearing was a preliminary hearing and that his May 2002 hearing was a revocation hearing. As a result, he incorrectly applies the federal due process requirements to these hearings. In fact, Carter did not have a preliminary hearing. His December 31, 2001 hearing was a revocation hearing and his March 6, 2002 hearing was a post-revocation hearing. In light of the standards set forth in Morrissey, the Court must address three issues: (1) whether the APA was required to provide Carter with a preliminary hearing; (2) whether his revocation hearing met federal due process requirements; and (3) whether he had a right to counsel at his post-revocation hearing.

**(1) The requirement for holding a preliminary hearing.**

The APA was not required to hold a preliminary hearing because Carter was being detained under a separate conviction, independent of his parole. The Supreme Court stated in Morrissey that the purpose of a preliminary hearing is to determine if there is probable cause to hold the parolee as a parole violator. Morrissey, 408 U.S. at 485. It is not necessary to hold a preliminary hearing if the

parolee is being held under a separate conviction since he has no liberty interest as a prisoner. Therefore, the APA did not violate his due process rights.

### (2) Due process analysis of Carter's revocation hearing.

Carter's December 31, 2001 parole revocation hearing met the six federal due process requirements defined by Morrissey. First, he received and signed a written notice of the allegations against him. (Pet. Ex. B.) Second, he was aware that the APA would rely on his December 10, 2001 conviction as evidence against him. He knew that his parole officer would testify that he did not report on October 17, 2001 and that he did not reside at his approved address. Third, Carter testified on his own behalf. (Pet. Ex. C, Return of Writ Ex. 12.) Although he did not call any witnesses to testify on his behalf, he had an opportunity to do so. (Pet. Ex. B.) Fourth, his counsel cross examined the witnesses who testified against him. (Return of Writ Ex. 12.) Fifth, Officer Mealey was a neutral and detached arbiter since she was not his parole officer.[2] Sixth, Officer Mealey wrote a statement indicating that Carter was guilty and cited the evidence on which she relied for making that finding. (Pet. Ex. C.) Thus, the December 31, 2001 hearing met the six requirements of Morrissey.

The Court in Morrissey added that revocation proceedings should be held within a reasonable time after the parolee is initially detained. Morrissey, 408 U.S. at 488. Carter's petition indicates that the APA held his revocation hearing pursuant to the time requirements set forth in Policy 501-27.[3] (Mem. in Supp. of Pet. at 4).

Carter argues that the APA did not follow Policy 501-27 when it revoked his release. (Pet. at 4-5.) Carter relies on Section N of Policy 501-27 which reads, "The decision to schedule a violation

---

[2] The Supreme Court in Morrissey stated that due process requires that a hearing body be impartial. It is sufficient that the hearing officer be someone other than the one who reported the parole violations and recommended release revocation. Morrissey, 408 U.S. at 486.

[3] It is unclear whether Carter is arguing that the APA violated the scheduling requirements of the Policy. (Mem. in Supp. of Pet. at 4.) Regardless, the Court is convinced that the APA followed its scheduling requirements. Policy 501-27 requires the APA hold a revocation hearing within 15 business days of detaining a parolee. (Pet. Ex. C.) Carter's parole officer, Shannon Rothgeb, served Carter with a notice of his violation hearing on December 19, 2001. Id. at 2. The APA did not detain him as a parole violator until December 31, 2001. Even if the APA had activated a hold order on December 19, 2001, it is clear that the revocation hearing was held within 15 business days. There are 12 calendar days between December 19, 2001 and December 31, 2001. Of those days, four are weekend days and one is a holiday, Christmas Day. Therefore, there were only 7 business days between December 19, 2001 and December 31, 2001.

-8-

hearing will be at the discretion of the unit supervisor, except as indicated in Section D(4) of this policy. However, most first-time technical and misdemeanor violations shall receive a unit level sanction…" Carter claims that, pursuant to Policy 501-27, he should have received a unit level sanction rather than having his release revoked because he was convicted of a misdemeanor and he was not a parole violator prior to the December 31, 2001 hearing. However, state parole policies that give the parole board discretion in making parole decisions do not create any federal due process rights. Sweeton, 27 F.3d at 1164-1165. Since Policy 501-27 gives the APA discretion in deciding whether to hold revocation proceedings and what sanctions to give a violator, the Policy does not create any federal due process rights. Therefore, violation of the Policy does not deprive the parolee of liberty without due process and is not grounds for granting a writ of habeas corpus.

**(3) Carter's right to counsel at his post-revocation hearing.**

The parole board acted within its discretion by not providing counsel at Carter's post-revocation hearing. Following the logic of Morrissey and Gagnon,[4] a parole violator at a post-revocation hearing has less due process rights than a parolee at a revocation hearing. In the context of a revocation hearing, the Supreme Court in Gagnon stated that the state should have considerable discretion in deciding whether to provide counsel. Gagnon, 411 U.S. at 790. The Supreme Court limited the state's discretion by stating that the state should provide counsel when it appears that the parolee is incapable of speaking for himself. Id. Carter has not alleged that he was incapable of effectively speaking for himself at the March 6, 2002 hearing. Since Carter had less due process rights than a parolee at a revocation hearing, the APA acted within its discretion when it denied Carter counsel at his post-revocation hearing.

## IV. CONCLUSION

For the foregoing reasons Carter's petition is denied.

---

[4] The Supreme Court stated in Morrissey and Gagnon that the rights Due Process affords a person depend on his liberty interest. Morrissey, 408 U.S. at 480-82; Gagnon, 411 U.S. at 788-91. Parolees have liberty conditioned on the terms of their parole. Therefore, parolees have a greater liberty interest than a prisoner without liberty, but a lesser interest than a criminal defendant with complete liberty. It follows that a parole violator, who has been denied his conditional liberty and is at a post-revocation hearing, has less due process rights than a parolee at a revocation hearing with conditional liberty at stake.

The Court certifies that an appeal cannot be taken in good faith because the Petitioner has not made a substantial showing of the denial of a constitutional right.  <u>See</u> Federal Rule of Appellate Procedure 22(b); 28 U.S.C. § 2253(c).  The Court also certifies that a motion to proceed *in forma pauperis* on appeal cannot be well taken.  <u>See</u> 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.


Issued: August 2, 2005                              <u>s/ John M. Manos</u>
                                                                  UNITED STATES DISTRICT JUDGE